**HALPER SADEH LLP**
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Tel: (212) 763-0060
Fax: (646) 776-2600
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD HILLEL,<br><br>   Plaintiff,<br><br>v.<br><br>AMAG PHARMACEUTICALS, INC., JOHN A. FALLON, PAUL FONTEYNE, DAVID JOHNSON, SCOTT MYERS, KATHRINE O'BRIEN, ANNE M. PHILLIPS, GINO SANTINI, DAVEY S. SCOON, and JAMES SULAT,<br><br>   Defendants. | Case No:<br><br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Richard Hillel ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1.      This is an action against AMAG Pharmaceuticals, Inc. ("AMAG" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated

1

thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition (the "Proposed Transaction") of AMAG by Covis Mergerco Inc. ("Merger Sub"), an indirect wholly owned subsidiary of Covis Group S.à r.l. ("Covis").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New Jersey, including through the sale of its products.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of AMAG common stock.

7. Defendant AMAG is a pharmaceutical company that develops, manufactures, and commercializes therapeutics for maternal and women's health, and anemia management in the

United States. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ Global Select Market under the ticker symbol, "AMAG."

8. Defendant John A. Fallon ("Fallon") is a director of the Company.

9. Defendant Paul Fonteyne ("Fonteyne") is a director of the Company.

10. Defendant David Johnson ("Johnson") is a director of the Company.

11. Defendant Scott Myers ("Myers") is President, Chief Executive Officer ("CEO"), and a director of the Company.

12. Defendant Kathrine O'Brien ("O'Brien") is a director of the Company.

13. Defendant Anne M. Phillips ("Phillips") is a director of the Company.

14. Defendant Gino Santini ("Santini") is Chairman of the Board of the Company.

15. Defendant Davey S. Scoon ("Scoon") is a director of the Company.

16. Defendant James Sulat ("Sulat") is a director of the Company.

17. Defendants Fallon, Fonteyne, Johnson, Myers, O'Brien, Phillips, Santini, Scoon, and Sulat are collectively referred to herein as the "Individual Defendants."

18. Defendants AMAG and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Company and the Proposed Transaction**

19. AMAG is a commercial-stage biopharmaceutical company focused on bringing innovative products to patients with unmet medical needs.

20. AMAG markets products that support the health of patients in the areas of hematology and maternal health, including Feraheme® (ferumoxytol injection) for intravenous use, indicated for the treatment of iron deficiency anemia in adults, Makena®

3

(hydroxyprogesterone caproate injection) auto-injector, a progestin indicated to reduce the risk of preterm birth in certain women.

21. AMAG's portfolio also includes two product candidates, AMAG-423 (digoxin immune fab (ovine)), which was being studied for the treatment of severe preeclampsia in pregnant women, and ciraparantag, which was being studied as an anticoagulant reversal agent.

22. In December 2019, Covis approached AMAG indicating it was interested in acquiring the global rights to Feraheme. AMAG communicated it would not consider a sale of Feraheme at the time given that AMAG was anticipating undertaking an exploration of a potential sale of its women's health assets.

23. Beginning in January 2020, AMAG entered into discussions with numerous third parties to sell all or some its women's health assets, including Intrarosa (prasterone), a steroid to alleviate pain during intercourse, and Vyleesi (bremelanotide injection), an "as needed" therapy for women that is used in anticipation of sexual activity. Discussions continued throughout 2020.

24. AMAG focused on the divestiture of its women's health business in February, March, and April 2020.

25. On April 7, 2020, Covis sent a non-binding letter of interest to acquire AMAG for $11.00 per share (the "April Proposal").

26. Throughout April 2020, AMAG "continued to focus on the divestiture of the women's health assets."

27. On May 21, 2020, AMAG announced the sale of its rights to Intrarosa to Millicent Pharma Limited ("Millicent"). The Company continued to work to divest its rights to develop and commercialize Vyleesi.

28. On July 13, 2020, Covis sent a non-binding letter of interest to acquire AMAG for

$11.50 per share and the potential for additional cash payments (the "CVRs") of up to an aggregate of $1.50 per share if certain sales and regulatory milestones were achieved (the "July 13 Proposal").

29. Between July 14 and July 27, 2020, Goldman Sachs and Co., LLC ("Goldman Sachs"), AMAG's financial advisor, purportedly reached out to eight identified parties potentially interested in acquiring AMAG.

30. On July 23, 2020, AMAG announced it entered into an exclusive licensing agreement with Norgine B.V. to develop and commercialize ciraparantag in Europe, Australia, and New Zealand.

31. On July 23, 2020, Covis sent a revised non-binding letter of interest to acquire AMAG for $13.00 per share in cash with a six-week exclusivity period (the "July 23 Proposal").

32. On July 27, 2020, AMAG announced the termination of its license agreement with Palatin Technologies, Inc. and the return of its rights to develop and commercialize Vyleesi.

33. Over the next several weeks, Goldman contacted eight additional parties who purportedly might have been interested in acquiring AMAG. According to the Solicitation Statement, the 16 parties contacted by Goldman declined to pursue an opportunity with AMAG.

34. On September 1, 2020, Covis sent a revised non-binding letter of interest to acquire AMAG for $13.00 per share in cash with an exclusivity period lasting until September 30, 2020 (the "September 1 Proposal").

35. Defendant Myers and Goldman communicated to Covis, on behalf of the Board, that $13.00 was inadequate and that Covis would have to raise its offer for the Board to consider exclusivity.

36. On September 9, 2020, Covis sent a revised non-binding letter of interest to acquire

AMAG for $13.75 per share in cash with an exclusivity period lasting until September 30, 2020 (the "September 9 Proposal").

37. On October 1, 2020, AMAG and Covis executed a definitive merger agreement and announced that they had entered into such an agreement under which Covis will acquire AMAG for $13.75 per share in cash. The press release states, in pertinent part:

**Covis Group Announces Agreement to Acquire AMAG Pharmaceuticals**

October 01, 2020 10:45 ET | **Source:** AMAG Pharmaceuticals, Inc.

*Addition of AMAG's category leading treatments positions Covis to become a global market leader of therapeutic solutions for life-threatening conditions and chronic illnesses*

*Covis will commence a tender offer to acquire all the outstanding shares of AMAG for a purchase price of $13.75 per share in cash, or approximately $647 million, including debt obligations expected to be assumed or repaid net of cash*

*Transaction expected to close in November 2020 post tender offer*

LUXEMBOURG, ZUG, Switzerland and WALTHAM, Mass., Oct. 01, 2020 (GLOBE NEWSWIRE) -- Covis Group S.à r.l. ("Covis") and AMAG Pharmaceuticals, Inc. (NASDAQ: AMAG) today announced that they have entered into a definitive agreement under which Covis will acquire AMAG for $13.75 per share in cash, or approximately $498 million on a fully diluted basis and approximately $647 million on an enterprise basis, including debt obligations expected to be assumed or repaid net of cash. The offer represents a premium of approximately 46% to the closing price of AMAG's common stock on September 30, the last full trading day prior to the announcement.

Commenting on the transaction, Covis CEO Michael Porter said, "AMAG's category leading treatments are strong strategic complements to our existing therapeutic portfolio. Through this combination, we believe we will be able to unlock value for all of our stakeholders, employees and patients through the effective and efficient management of these products, coupled with our two companies' longstanding commitment to expanding patient access to therapy and putting patient interests first. At Covis, we never lose sight that our patients are our paramount concern. We look forward to engaging with the talented team at AMAG as we work together to plan the integration of our two organizations."

AMAG CEO Scott Myers added, "In the beginning of 2020, AMAG announced that the company had undertaken a strategic review of our product portfolio and strategy, the guiding principles of which included driving near- and long-term profitability and enhancing shareholder value. This strategic review resulted in the company pursuing and accomplishing the divestiture of its women's health assets, and other efforts to streamline and strengthen the core business to position AMAG for the future. Following this initial transformation, our Board of Directors and management team, together with independent legal and financial advisors, thoroughly evaluated the transaction with Covis as well as other strategic options and concluded that it represents the most compelling opportunity for shareholders, providing them certain and immediate cash value. We believe Covis is the right partner for AMAG, especially in light of Covis' shared commitment to ensuring that our therapies will reach patients in need. We are confident the work we've done will continue to thrive under Covis' leadership."

The completion of the tender offer is subject to customary closing conditions, including the tender of at least a majority of the outstanding shares of AMAG's common stock, the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, and other customary conditions. Following the successful completion of the tender offer, an indirect, wholly owned subsidiary of Covis will merge with AMAG (the "merger") and the outstanding AMAG shares not tendered in the tender offer will be converted into the right to receive the same $13.75 per share in cash paid in the tender offer. The tender offer is expected to commence in October 2020. Covis plans to finance the transaction with cash on hand, and a combination of committed debt and equity financing. There is no financing condition to the obligations of Covis to consummate the transaction.

As part of the transaction, Covis intends to enter into an amended and restated credit facility with its current lenders (the "Lenders"), pursuant to which the Lenders will provide up to a $460 million senior secured incremental term loan and a $55 million secured revolver (the "Covis Debt Financing"). The proceeds from the Covis Debt Financing, plus equity commitments from Covis' equity sponsor, will be used to pay the cash purchase price for the transaction and repay any of the existing AMAG debt that is not assumed. The Covis Debt Financing amount will be added to Covis' current $450 million term loan facility with the Lenders. As the merger will result in a change of control under the terms of AMAG's Indenture governing its 3.25% Convertible Senior Unsecured Notes Due 2022 (the "Convertible Notes"), the holders of the Convertible Notes will have the right to put at par the Convertible Notes held by them for a period of twenty business days following the closing of the merger.

All Board members and executive officers of AMAG have agreed to tender their shares in favor of the transaction. The transaction, which has been unanimously approved by the Board of Directors of each company, is expected to close in

November 2020, pending Hart-Scott-Rodino (HSR) approval and the conditions to the tender offer being satisfied.

Goldman Sachs & Co. LLC is acting as exclusive financial advisor, and Goodwin Procter LLP is acting as legal advisor to AMAG. Paul, Weiss, Rifkind, Wharton and Garrison LLP is acting as legal advisor to Covis.

**About Covis**
Covis is headquartered in Luxembourg with operations in Zug, Switzerland and is a global specialty pharmaceutical company that markets therapeutic solutions for patients with life-threatening conditions and chronic illnesses. Additional information is available at **www.covispharma.com**.

**About AMAG**
AMAG is a commercial-stage biopharmaceutical company focused on bringing innovative products to patients with unmet medical needs. The company does this by leveraging its development and commercial expertise to invest in and grow its pharmaceutical products across a range of therapeutic areas. For additional company information, please visit www.amagpharma.com.

AMAG Pharmaceuticals®, the logo and designs are registered trademarks of AMAG Pharmaceuticals, Inc.

38. On October 15, 2020, the Company filed a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") with the SEC in connection with the Proposed Transaction.

**B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions**

39. The Solicitation Statement, which recommends that AMAG shareholders tender their shares to Merger Sub in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) the Company's financial projections; and (ii) the financial analyses performed by the Company's financial advisor, Goldman Sachs, in connection with its fairness opinion.

40. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Recommendation of the Board; (ii) Reasons for the Recommendation of the Company Board; (iii) Opinion of the

8

Company's Financial Advisor; and (iv) Certain Prospective Financial Information.

41. The tender offer in connection with the Proposed Transaction is set to expire at midnight (New York City time) on November 12, 2020 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to enable them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning the Company's Financial Projections

42. The Solicitation Statement omits material information concerning the Company's financial projections.

43. The Solicitation Statement provides that the Company's management prepared certain non-public unaudited prospective financial information for fiscal years 2020 through 2040 in connection with its evaluation of potential strategic alternatives and the Proposed Transaction (the "Management Projections").

44. The Management Projections were provided to: (i) the Board to consider, analyze, and evaluate the Proposed Transaction; and (ii) Goldman Sachs in connection with its fairness opinion to the Board and to perform related financial analyses.

45. With respect to the Management Projections, the Solicitation Statement fails to disclose all line items underlying Total Product Revenue, Gross Profit, Total Operating Expenses,

and Total Other.[1]

46. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

47. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Goldman Sachs' Analyses

48. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning analyses performed by Goldman Sachs.

49. The Solicitation Statement provides that, in connection with its fairness opinion and related financial analyses, Goldman Sachs reviewed "certain net operating loss carryforwards of the Company, as approved for Goldman Sachs' use by the Company" (the "NOL Forecasts"). *See* Solicitation Statement at 24.

---

[1] Although "Total Product Revenue" purportedly reflects the sum of the parts analysis of Feraheme, Feraheme Imaging, Feraheme AG, Makena, and Ciraparantag, the Solicitation Statement fails to provide a corresponding breakdown of revenue for these items. This information must also be disclosed for the reasons mentioned *infra* ¶ 54. Further, "Total Other" is defined as including "OUS Ciraparantag Royalty/Milestone Income, Intrarosa Milestone Income and Required Minimum Production Obligations" but none of these individual line items have been disclosed. *See* Solicitation Statement at 33.

50. The Solicitation, however, fails to adequately disclose the NOL Forecasts.

51. The Solicitation Statement provides that "Goldman Sachs calculated, based on the Management Projections *and other projected financial information provided by AMAG management*, unlevered free cash flows for the years 2020 through 2040 for use in its final financial analyses relating to the Management Projections." *See* Solicitation Statement at 33.

52. The Solicitation Statement, however, fails to adequately disclose the "other projected financial information provided by AMAG management."

53. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Sum-of-the-Parts Discounted Cash Flow Analysis*": (1) the Company management's risk-adjusted estimates of the unlevered free cash flows to be generated *from each of* Feraheme, Makena and Ciraparantag for the period from June 30, 2020 through 2040, and all underlying line items;[2] (2) the NOL Forecasts; (3) the individual inputs and assumptions underlying the discount rates ranging from 10.5% to 12.5%; (4) the Company management's estimates of revenues expected in connection with certain Intrarosa Milestones payments and expenses expected in connection with each of AMAG-423 and Vyleesi; (5) the Company management's estimates of research and development costs of the Company that are required to support the Company's existing products and that had not been allocated to specific product candidates; (6) the Company management's estimates of corporate costs of the Company that are required to support the Company's existing products and for the Company to remain as a standalone company and that had not been allocated to specific product candidates; (7) the net debt of the Company as of June 30, 2020; and (8) the total number of fully diluted outstanding Shares

---

[2] Additionally, the Solicitation Statement fails to disclose the specific risk adjustments the Company's management made to these estimates and further fails to quantify the risk adjustments and their impact on these estimates.

11

as of September 25, 2020.

54. A reasonable investor would find this information material to assess whether the Proposed Transaction provides the greatest value to shareholders, including whether it provides greater value to shareholders than AMAG licensing or selling some or all of its remaining assets. This information is even more material in light of the fact that AMAG contemplated selling its global rights to Feraheme to Covis in December 2019 and actually licensed or sold some of its assets this year, including the sale of its rights in Intrarosa to Millicent in May 2020 and the entry into a licensing agreement in July 2020 with Norgine B.V. to develop and commercialize ciraparantag in Europe, Australia, and New Zealand.

55. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the illustrative one-year forward EV / Revenue multiples of 2.0x to 3.0x and illustrative discount rate of 11.6%; (2) the Company's forecasted net debt for each of the fiscal years 2021 to 2024; and (3) the number of fully diluted outstanding shares of the Company as of September 25, 2020.

56. The Solicitation Statement fails to disclose the following concerning Goldman Sachs' "*Premia Analysis*": (1) the transactions observed by Goldman Sachs; and (2) the premiums paid in each transaction.

57. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs in rendering its purported fairness opinion must be fairly disclosed to AMAG shareholders. The description of Goldman Sachs' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, AMAG shareholders are unable to fully understand Goldman Sachs' fairness opinion and

analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

60. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

61. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

62. The false and misleading statements and omissions in the Solicitation Statement are

material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

63. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

64. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

65. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

66. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

68. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

69. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

70. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

71. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

72. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

73. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

74. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

75. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

77. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the recommendation of the Individual Defendants to tender their shares pursuant to the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

79. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

80. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

81. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

      B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

      C.      Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

      D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

      E.      Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: November 5, 2020

Respectfully submitted,

**HALPER SADEH LLP**

/s/Zachary Halper
Zachary Halper, Esq.
186 Darwin Lane
North Brunswick, NJ 08902
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: zhalper@halpersadeh.com

Daniel Sadeh, Esq. (*pro hac vice* application forthcoming)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600

*Counsel for Plaintiff*